FILED
97 MAR 11 PM 2:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAR 11 1997

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

MARIE MATTHEWS,         )
                        )
    Plaintiff,          )
                        )
v.                      )    CV95-H-3306-NE
                        )
HOUCHENS INDUSTRIES, INC.,)
et al.,                 )
                        )
    Defendants.         )

MEMORANDUM OF DECISION

Presently before the Court is the January 16, 1997 motion for summary judgment filed by defendants, Houchens Industries, Inc. and Tennessee Groceries, Inc. Pursuant to the Court's January 17, 1997 Order, the motion was deemed submitted, without oral argument, on February 14, 1997.

I. Procedural History

Plaintff Marie Matthews commenced this action by filing a complaint in this Court on December 22, 1995. The complaint named three defendants: Houchens Industries, Inc. ("Houchens"), Tennessee Groceries, Inc. ("Tennessee Groceries"), and Sav-a-lot Discount Drugs, Inc. Plaintiff alleged that all three defendants were her "employers," and asserted several claims under the Age Discrimination in Employment Act. Count I of the complaint asserted a claim of discriminatory failure to promote plaintiff

and a claim that the defendants engaged in age-based harrassment of plaintiff. Count II alleged that the defendants were guilty of negligent failure to prevent age discrimination, while Count III asserted that the defendants wantonly failed to prevent the discrimination.

Although the record shows that all three defendants were served, only Houchens and Tennessee Groceries answered. The third defendant, Sav-a-lot Discount Drugs, Inc., has never entered an appearance in this action. However, in their answers, Houchens and Tennessee Groceries admitted that they were plaintiff's employer and asserted that they were not affiliated with Sav-a-lot Discount Drugs, Inc. in any way.

Despite the fact that Sav-a-lot was apparently served on December 28, 1995, plaintiff has failed to request an entry of default against Sav-a-lot, and has not challenged the assertion of Houchens and Tennessee Groceries that they, not Sav-a-lot, were plaintiff's employers.[1] Because it is undisputed that Houchens and Tennessee Groceries were plaintiff's employers and that Sav-a-lot had no relationship with plaintiff whatsoever, and because plaintiff has chosen not to pursue her claims against Sav-a-lot, the Court will, by a separate Order, dismiss the

---

[1] Indeed, a review of the Court file shows that plaintiff has not filed a single document in the record in this case since December 1995, when the compaint was filed. Defendants Houchens and Tennessee Groceries have filed several motions, but plaintiff has made no response to anything filed by the defendants.

2

claims against Sav-a-lot Discount Drugs, Inc., for plaintiff's failure to prosecute her claims against that party.

Houchens and Tennessee Groceries[2] filed a motion to dismiss Counts II and III of the complaint on March 28, 1996, asserting that those counts failed to state claims redressable under the ADEA. Plaintiff filed no response to the motion, and the Court dismissed Counts II and III by an Order dated April 19, 1996.

Thereafter, defendants filed a motion to compel discovery and a "motion to limit damages" on June 3 and June 6, 1996. Plaintiff did not respond to either motion, and both motions were granted by an Order dated June 12, 1996.

Finally, on January 16, 1997, defendants filed the present motion for summary judgment, accompanied by an extensive brief. The Court entered a submission order the next day, requiring defendants to file any evidentiary materials by January 24, 1997, and requiring plaintiff to file any evidence she desired by February 7, 1997. That same Order gave plaintiff until February 14, 1997 to file a brief. Defendants filed their evidentiary submission on January 21, 1997, but plaintiffs have not yet responded to the motion for summary judgment in any way -- plaintiff has filed neither an evidentiary submission nor a brief.

---

[2]All references hereinafter to "defendants" or "the defendants" will refer only to Houchens and Tennessee Groceries.

3

## II. Standards for Evaluating a Summary Judgment Motion

The Eleventh Circuit has stated that district courts should use caution when taking employment discrimination cases away from the trier of fact by means of summary judgment. Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 84 F.3d 1380, 1384 (11th Cir. 1996). However, the Eleventh Circuit also recognizes that "[s]ummary judgments . . .are not rare in employment discrimination cases." Earley v. Champion International Corp., 907 F.2d 1077, 1080. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which is designated 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Given the ease of complying with the notice pleading requirements in asserting a discrimination claim, the Eleventh Circuit encourages district courts that "plaintiffs seeking to avoid summary judgment should be strictly held to the requirements of Rule 56(e); the plaintiff must present specific non-conclusory facts that would support a jury verdict against the particular defendant on discriminatory intent." Ratliff v. DeKalb County, 62 F.3d 338, 341 (11th Cir. 1995).

Where a plaintiff's discrimination claim is based on circumstantial evidence, the court employs the burden-shifting

4

framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff has the burden of establishing a prima facie case of discrimination.³ Second, after plaintiff has presented a prima facie case, the burden of production shifts to the defendant, requiring an articulation of some "legitimate, nondiscriminatory reason" for the alleged discriminatory employment action. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). "[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted." Brown v. American Honda Motor Co., Inc., 939 F.2d 946, 950 (11th Cir. 1991), cert. denied, 502 U.S. 1058 (1992) (quoting Grigsby v. Reynolds Metals Co., 821 F.2d 590, 596 (11th Cir. 1987)).

Once the defendant presents legitimate, nondiscriminatory reasons for its action, then the plaintiff must prove by a preponderance of the evidence that the reasons offered by the defendant are a mere pretext for discrimination, and to persuade the fact-finder that the defendant intentionally discriminated

---

³ In order to present a prima facie case of discrimination, plaintiff must show: (1) that he or she belongs to a protected class; (2) that he or she either applied and was qualified for a position for which the employer was seeking applicants or was satisfactorily performing the duties of the job; (3) that he or she was rejected or terminated; and (4) that, after the rejection, the position remained open and the employer continued to seek applicants for persons of plaintiff's qualifications. McDonnell Douglas, 411 U.S. at 802. Based on O'Connor v. Consolidated Coin Caterers Corp., ___ U.S. ___, 116 S.Ct. 1307, 1310 (1996), plaintiff need not show that the position at issue was filled by a person outside the protected class.

5

against the plaintiff. McDonnell Douglas, 411 U.S. at 804. In other words, "[a]fter a Title VII plaintiff makes out a prima facie case, and the defendant produces a legitimate nondiscriminatory explanation for its actions, the McDonnell-Burdine presumption drops from the case. At that point, the inquiry is whether the defendant intentionally discriminated against the plaintiff." Harris v. Shelby County Board of Education, 99 F.3d 1078, 1083 (11th Cir. 1996).

"[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment." Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 444 (11th Cir. 1996) (quoting Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988) (other citations omitted) (alterations in original). "At the summary judgment stage, once an employer articulates a legitimate, nondiscriminatory reason for the discharge, the burden shifts back to plaintiff to raise a genuine factual question as to whether the stated reason is mere pretext." Cortin v. Southland Int'l Trucks, 25 F.3d 1545, 1550 (11th Cir. 1994); Hairston v. Gainesville Sun Publ. Co., 9 F.3d 913, 920 (11th Cir. 1993).

Plaintiff may prove that the defendant intentionally discriminated against him either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered

6

explanation is unworthy or credence." Carter v. City of Miami, 870 F.2d 578, 584 (11th Cir. 1989). "If the defendant's proffer of credible, nondiscriminatory reasons for its actions is sufficiently probative, then the plaintiff must come forward with specific evidence demonstrating that the reasons given by defendant were a pretext for discrimination." Brown, 939 F.2d at 950. "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." Isenbergh, 97 F.3d at 444 (quoting Young, 840 F.2d at 830).

### III. Relevant Undisputed Facts

As noted above, only the defendants have made an evidentiary submission to the Court, and so all of the facts asserted by defendants are undisputed.

Defendants operate a grocery store in Scottsboro, Alabama under the named "Sav-a-lot." (Matthews Depo. at 19). The store's operating hours are from 8:00 a.m. to 9:00 p.m. Monday through Saturday, and 12:00 p.m. to 6:00 p.m. on Sunday. (Id.). Plaintiff, who is over the age of 40, began working at defendants' store on January 27, 1994, in the position of cashier. (Id. at 18, 21).

When plaintiff began her employment, the store's manager was Eddie Hill and the district manager was Larry Chambliss. (Id. at 22, 24). Johnnie Pedigo replaced Eddie Hill as the store's manager in June 1994. (Pedigo Aff.). According to Pedigo, plaintiff told him that she preferred to work during the day, because her home was located in a mountainous area that became foggy at night, making driving dangerous. (Pedigo Aff.). Another Sav-a-lot employee had "numerous" conversations with plaintiff, in which plaintiff stated that she did not want to work nights. (Frazier Aff.). Plaintiff does not recall these conversations with Pedigo or Frazier. (Matthews Depo. at 32-34). However, Pedigo began scheduling plaintiff's hours mostly during the day to accomodate this request. (Pedigo Aff.). Plaintiff admits that Pedigo scheduled her work hours during the day. (Matthews Depo. at 34).

Shortly after Pedigo arrived, Chambliss informed him that the store needed a new head cashier. (Pedigo Aff.). A head cashier's duties include supervising and directing other cashiers, entering data on a computer, and doing bookkeeping work. (Pedigo Aff.; Chambliss Aff.). The computer data entry and paperwork required of a head cashier is done at the time the store closes every night, and so a head cashier must be available to work at night and close the store. (Id.). Indeed, the store's two head cashiers alternate between the day and night shifts on a weekly basis. (Id.).

8

Considering these criteria, Pedigo chose Denise Porter for the head cashier position. (Id.). Porter had prior experience as a head cashier at another grocery store, and was willing to work nights. (Id.). Pedigo did not consider plaintiff for the position because plaintiff did not have any prior paperwork or computer experience, and was unwilling to work nights. (Id.).[4]

In October 1994, plaintiff requested a leave of absence to go to South Alabama to visit her family. (Matthews Depo. at 34). At the time, plaintiff told Pedigo and other store employees that she would "probably" be staying permanently in South Alabama, noting that she would not be returning to Sav-a-lot if she found suitable employment while she was away. (Id. at 37-38). Plaintiff, however, did not move permanently, and returned after about three weeks. (Id. at 34, 37).

On October 29, 1994, Denise Porter left her position as head cashier and Pedigo offered the position to Melissa Frazier. (Pedigo Aff.). Frazier was willing to work nights, had graduated high school, and was enrolled in accounting courses at a nearby college. (Id.). Plaintiff was not considered for the position because Pedigo believed that plaintiff was unwilling to work nights, and because plaintiff had not graduated from high school

---

[4] Plaintiff claimed in her deposition that she did, in fact, have some eduction or experience in bookkeeping. (Matthews Depo. at 10). However, plaintiff also admitted that she did not mention these qualifications on her employment application. (Id. at 16).

9

and had no prior computer or bookkeeping experience. (Id.). In addition, Pedigo was concerned about plaintiff's willingness to stay with the company, since plaintiff had stated that she might be moving to South Alabama. (Id.). Finally, Pedigo believed that plaintiff had begun to display a poor attitude toward her work and co-workers, making her an unsuitable candidate for a supervisory position. (Id.).

Soon after Frazier was hired as a head cashier, plaintiff asked Pedigo why she was not considered for the position. (Pedigo Aff.). Pedigo told her that Frazier had superior qualifications. (Id.).

At some time that plaintiff cannot recall, plaintiff asserts that she had a conversation with Pedigo in which Pedigo said that he preferred younger people "up front" in the store. (Matthews Depo. at 41).[5]

Finally, although plaintiff asserted a claim of age-based harrassment or a hostile work environment in her complaint, she disavowed this claim in her deposition, claiming that there was simply one incident in which she and Pedigo had an argument over hours and pay and Pedigo's attitude was hostile at that time. (Matthews Depo. at 48-50).

---

[5]Defendants deny that Pedigo made this statement, but the Court assumes, for the purposes of the present motion, that it was made.

10

IV. Analysis

As noted above, Count I of plaintiff's complaint asserts two claims under the ADEA: a claim for failure to promote plaintiff to the head cashier position, and another claim for age-based harrassment or a hostile work environment.

Regarding the harrassment claim, plaintiff's deposition testimony that there was no hostile environment at Sav-a-lot precludes any recovery on this claim, assuming that such a claim exists under the ADEA. Thus, defendants' motion is due to be granted with respect to the harrassment claim.

Turning to plaintiff's allegation that she was denied the opportunity for a promotion to the head cashier position because of her age, defendants first argue that plaintiff has not presented any true "direct evidence" of discrimination. Defendants acknowledge that plaintiff asserts that Pedigo commented that he preferred younger people "up front," but defendants argue that this evidence is not sufficiently "direct" under the Eleventh Circuit's rigorous standards for evaluating direct evidence. The Court agrees.

"Direct evidence of discrimination would be evidence, which, if believed, would prove the existence of a fact without inference or presumption." Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989). Direct evidence often takes the form of remarks made by employers that reveal discriminatory attitudes

11

and that are related to the challenged employment decision. See, e.g., Haynes v. W.C. Caye & Co., 52 F.3d 928, 930-31 (11th Cir. 1995) (statement by decisionmaker that women were unfit for the job plaintiff was rejected for constituted direct evidence); Miles v. M.N.C. Corp., 750 F.2d 867, 873-74 (11th Cir. 1985) (racial slur made by supervisor concerning blacks' work abilities constituted direct evidence). However, not every remark made in the workplace constitutes direct evidence of discrimination. Justice O'Connor defined "direct evidence" as follows:

> [t]hus, stray remarks in the workplace, while perhaps probative of sexual harassment, cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard.

Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) (citations omitted). The Eleventh Circuit has adopted Justice O'Connor's definition of direct evidence. See Trotter v. Board of Trustees of the University of Alabama, ___ F.3d ___, 1996 WL 438608, at *3-4 (11th Cir. Aug. 20, 1996); EEOC v. Alton Packaging Corp., 901 F.2d 920, 924 (11th Cir. 1990). See also O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-49 (4th Cir. 1995) ("Unless the remarks on which plaintiff relies were related to the employment decision in question, they cannot be evidence of a discriminatory discharge."); Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309,

12

314 (6th Cir. 1989) ("isolated and ambiguous statements," even when made by decision-maker, did not constitute direct evidence).

Here, the asserted remark by Pedigo cannot be direct evidence because it was an isolated, ambiguous statement, and because it was not made at a time and in a manner that would suggest that it was related to Pedigo's decision-making process. Absent some evidence to connect Pedigo's remark with the decision not to promote plaintiff to head cashier, the remark is simply a piece of circumstantial evidence that cannot, by itself, carry plaintiff's burden of making out a <u>prima facie</u> case.

The Court turns to the familiar burden-shifting analysis of <u>McDonnell Douglas</u> and <u>Burdine</u> to analyze defendant's motion for summary judgment. Defendants assert that plaintiff cannot make out a <u>prima facie</u> case under <u>McDonnell Douglas</u>, because plaintiff's lack of experience and unwillingness to work at night rendered her unqualified for the head cashier position. Although defendants may be correct in this regard, the Court prefers to assume, without deciding, that plaintiff has made out a <u>prima facie</u> case under <u>McDonnell Douglas</u>.

Thus, the burden shifts to defendants to produce some evidence of a legitimate, non-discriminatory explanation for their failure to promote plaintiff. Defendants have easily met this burden of production. The undisputed evidence in the record is that plaintiff was less qualified than Porter or Frazier, was

unwilling to work nights,⁶ and displayed a poor attitude toward her work and co-workers. In addition, it is undisputed that plaintiff had announced the intention to move to another city, and Pedigo doubted that it would be worth the time to train a head cashier that might leave after a short period of time.

This production by defendants shifts the burden back to plaintiff to produce evidence from which the trier of fact could conclude that a true reason for the decision was age discrimination.⁷

Here, no reasonable trier of fact could conclude that defendants' proffered reasons were false, much less that a true reason for the decisions not to promote plaintiff was her age. As noted, defendants have produced unrebutted evidence indicating that the persons promoted to head cashier were more qualified and cooperative than plaintiff. Indeed, the only piece of evidence that might suggest discrimination -- Pedigo's remark about preferring younger people "up front" -- has not been shown to

---

⁶Although plaintiff appears to assert that she never told Pedigo that she was unwilling to work at night, it is undisputed that Pedigo <u>believed</u> that plaintiff desired to avoid night work.

⁷In <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 511 (1993), the Supreme Court held that evidence that the employer's stated reasons were pretextual could be sufficient to allow the trier of fact to infer discrimination, but that plaintiff must also establish that discrimination was a real reason for the employment decision. Thus, a plaintiff may be able to survive a summary judgment motion if she produces evidence from which a reasonable trier of fact could conclude that the employer's stated reasons for the negative employment decision were false.

have any relationship to the decision not to promote plaintiff. Pedigo's affidavit recites that he did not consider plaintiff's age when making his decision, and plaintiff has failed to produce any evidence from which the trier of fact could reach a contrary conclusion.

For the foregoing reasons, the defendants' January 16, 1997 motion for summary judgment is due to be granted. A separate Order will be entered accordingly.

DONE this 11th day of March, 1997.

SENIOR UNITED STATES DISTRICT JUDGE